**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| RICARDO POOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-01265-JHH-JEO |
| | ) | |
| VICTORRUS FELDER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ricardo Poole, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he had been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the Donaldson Correctional Facility in Bessemer, Alabama. The remaining defendant in this action is Correctional Office Victorrus Felder. The plaintiff seeks compensatory and punitive damages, as well as declaratory relief, for alleged excessive force. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

## CASE HISTORY

On January 10, 2014, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the remaining defendant and requesting he file a special report addressing the plaintiff's factual allegations. The parties were advised that the special report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. On May 30, 2014, the defendant filed a special report accompanied by affidavits and copies of certain prison administrative and medical records pertaining to the plaintiff. (Doc. 23). The plaintiff filed a response (objections) to the defendant's special report on June 23, 2014. (Doc. 25). On November 10, 2014, the parties were notified that the court would construe the defendant's special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a response to the defendant's motion for summary judgment on November 26, 2014, (doc. 32) which appears to be a photocopy of his earlier response. This matter is now before the court on the defendant's special report (doc. 23) being construed as a

motion for summary judgment, and the plaintiff's responses thereto. (Doc's 25 and 32).

## SUMMARY JUDGMENT STANDARD

Because the special report of the defendant is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendant, is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.*  In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to

show some evidence with respect to each element of his claim, all other issues of fact

become immaterial, and the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530

(11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to
> establish a prima facie case.  "In such a situation, there can be 'no
> genuine issue as to any material fact,' since a complete failure of proof
> concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial." [citations omitted].  Thus,
> under such circumstances, the public official is entitled to judgment as
> a matter of law, because the plaintiff has failed to carry the burden of
> proof.  This rule facilitates the dismissal of factually unsupported claims
> prior to trial.

898 F.2d at 1532.

## FACTUAL ASSERTIONS

On September 20, 2011, the plaintiff was an inmate in the Donaldson

Correctional Facility in Bessemer, Alabama.  On that date the defendant was part of

a "C.E.R.T" (Correctional Emergency Response Team) team conducting searches at

Donaldson for the purpose of discovery and removal of contraband.  (Doc. 1; see also

Doc. 23-2).  At approximately 7 a.m., the defendant and another officer entered the

plaintiff's cell in order to perform the contraband search.  *Id*.  While the other officer

stood by the door, the defendant ordered the plaintiff and his cell mate to lay face

down on their bunks.  *Id*. at 7.  Although the plaintiff complied with the order and

was laying on his bed face down, the defendant approached him and attempted to hit him on the side of the head.  The plaintiff avoided the first blow, but the defendant swung a second time and hit the him in his right ear.[1]  *Id*. at 7.  The defendant then began questioning the plaintiff and his cell mate regarding their knowledge of gang activity within the prison, and afterward performed a strip search of the two inmates. *Id*. at 7.  The plaintiff and his cell mate were then ordered to leave the cell so that it could be searched for contraband, at which point the plaintiff advised the officers that he could not hear out of his right ear and requested to see a supervisor.  *Id*. at 7-8. The request was denied and the plaintiff was ordered to wait in another part of the cellblock while the search was conducted.  *Id*. at 7-8.  When the search was completed, the plaintiff and his cell mate were locked back in the cell.  *Id*. at 8.

Later that day, as the plaintiff proceeded to the dinning hall for lunch, he notified several officers of the incident, and was eventually taken to the infirmary for an examination.  (Doc. 1 at 8).[2]  The medical records from that occasion show that the

---

[1] On this point, there is a genuine dispute between the parties.  The defendant denies hitting the plaintiff in his right ear and states that no force was used during the search of the plaintiff's cell.  (Doc. 23-2).

[2] It is undisputed that the event occurred at approximately 7:15 a.m. (doc. 1 at 7; doc. 23-4), and that the plaintiff was not seen in the infirmary until 11:40 a.m., over four hours later. (Doc. 23-8 at 2).  This is a salient point in light of the defendant's argument that his lack of malicious intent is demonstrated by the fact that the plaintiff "was taken for medical examination soon after the alleged incident."  (Doc. 23 at 14).  Not only is there no evidence the defendant initiated the effort to send the plaintiff to the infirmary, but the characterization of a four hour delay as "soon" stretches credulity.

5

plaintiff complained of an inability to hear out of his right ear, and that the nurse observed blood in his ear canal. (Doc. 23-8 at 2). He was therefore referred to the prison physician who examined him two days later and confirmed he was suffering from a perforated or ruptured right eardrum. *Id*., and doc. 1 at 8.[3] The plaintiff was prescribed a two week regimen of Motrin and Augmentin. *Id*. at 6.

After leaving the infirmary on September 20, the plaintiff was taken to Captain Strickland's office where he was asked to identify the officer whom he alleged had struck his right ear. (Doc. 1 at 8-9).[4] An incident report prepared by Captain Strickland acknowledges the plaintiff's assertion that he was slapped by a member of the C.E.R.T. team, that he identified the defendant as being responsible, and that the medical staff had observed blood in the plaintiff's ear canal. Attached to the defendant's special report is the affidavit of Captain Strickland who states that after he conducted an investigation "it could not be validated if CO Felder actually slapped Inmate Poole or if Inmate Poole busted his own ear." (Doc. 23-3). Accordingly, Captain Strickland recommended that no action be taken against the defendant,

---

[3] The physician's notes referring to this injury are handwritten on the Body Chart Documentation form of September 20. (Doc. 23-8 at 2).

[4] As part of Captain Strickland's investigation, the plaintiff and his cell mate were asked to submit a written statement, copies of which are attached to the special report. See "Use of Force Inmate Written Statement." (Doc. 23-6.). The plaintiff repeats his allegation that he was "slapped" by a member of the C.E.R.T. team. *Id*. The cell mate refused to cooperate with the DOC, stating: "When it's dealing with DOC[,] I have nothing to say!" *Id*. at 2.

despite the presence of blood in the plaintiff's ear canal, because "[t]he Use of Force in this incident is only an allegation."  (Doc. 23-7).

## DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320-21.   In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).[5]

Applying these standards to the facts before the court, it is clear that genuine issues of fact exist with respect to the plaintiff's Eighth Amendment excessive force

---

[5] The Court in *Hudson* made it clear that the absence of serious injury is relevant to an Eighth Amendment inquiry but is not conclusive.  503 U.S. at 7.

7

claim, which therefore precludes summary judgment at this time.  The plaintiff's sworn complaint and subsequent affidavit set out specific and detailed facts surrounding the events made the basis of this action.  In both the initial complaint and his affidavit, he states without refute that he had complied with the defendant's order to lay face down on his bunk, and there is nothing in the record to suggest he posed a threat to the defendant. The plaintiff's allegations, taken as true for purposes of summary judgment, show no reasonable need for the application of force, much less to the extent administered, and it seems clear that a reasonable jury could find that force was applied for reasons other than a good faith effort to maintain discipline. The defendant's general assertion that no force was used on that occasion simply creates a genuine issue of material fact to be decided by the trier of fact.

The defendant's additional argument, that his lack of malicious intent is evidenced by the fact that the plaintiff was taken for an examination "soon" after the incident, is wholly without merit.  It is true that *Hudson* requires this court to take into account any efforts by the defendant to temper the severity of the forceful response.  It is also true that "[t]his factor allows the court to take into account efforts by the police to mitigate the effects of the force that was applied," including the fact that officers "immediately summon[ ] medical assistance." *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009).  However, not only was the plaintiff's access to

medical care not "immediate" in this instance, but he testifies without refute that he advised the defendant of his need to go to the infirmary and was met with indignation and locked back in his cell. (Doc. 25 at 5-6). It was other officers who eventually escorted the plaintiff to the infirmary.

Finally, the defendant presents the argument that the plaintiff suffered from nothing more than a *de minimus* injury, thereby precluding an excessive force claim. (Doc. 12, p. 12). This assertion is also without merit. A perforated eardrum cannot be characterized as a *de minimis* injury. *See e.g., Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). More importantly, it is well settled that "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm" *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002). In this instance, the plaintiff has alleged facts from which a reasonable jury could find that the defendant's use of force was objectively unreasonable. Therefore, even if the plaintiff had suffered only minor injury, that alone would not entitle the defendant to summary judgment.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that the defendant's special report be treated as a motion for summary judgment and, as such, that it be **DENIED**. The magistrate judge further

RECOMMENDS that this action be referred to the undersigned for further proceedings.

Any party who objects to this report and recommendation must, within **fourteen (14) days** of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint or the special report also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C).

In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Objections not meeting this specificity requirement will not be considered by a district judge. A copy of the objections must be served upon all other parties to the action.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendant.

10

**DONE**, this the 18th day of May, 2015.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge